Creazzo v. Sun

*Ronnie Louis Creazzo,* for plaintiffs.
*John P. Lavelle,* for defendant.

McFADDEN, *J.,* June 3, 2005—Presently before the court is a motion for summary judgment filed by defendant, Medtronic, on March 15, 2005.

This matter was assigned to the Honorable F. P. Kimberly McFadden from the April 19, 2005 argument list. Following oral arguments, review of the briefs submitted and the file, this matter is now ready for disposition.

## FACTUAL/PROCEDURAL HISTORY

In May 1999, plaintiff, Joseph Creazzo, received an implantation of an Itrel 3 System. The Itrel 3 System is a prescription medical device that is surgically implanted and used to treat chronic, intractable pain of the trunk and limbs. The lead is a part of this system used for spinal cord stimulation.

After claims of ongoing pain, plaintiff had this system removed in October 2002 at Thomas Jefferson University Hospital.

Plaintiffs commenced this lawsuit with a writ of summons on November 29, 2001, and filed a complaint on or about February 22, 2002. Defendant, Kenneth P. Sun M.D., was dismissed with prejudice as a named defendant in this litigation on November 30, 2004.

On August 18, 2004, plaintiffs requested an extension of time for discovery, in part because the device could not be located and as such had not been physically inspected.

On September 1, 2004, the Honorable Emil Giordano granted plaintiffs 40 days to ascertain the location of the medical device.

Plaintiffs, to this date, have failed to locate the device.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Pursuant to Pa.R.C.P. 1035.2,

"After the relevant pleadings are closed, but within such a time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports,

an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

The standard of review for summary judgment is well settled. Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Capek v. Devito,* 564 Pa. 267, 270 n.1, 767 A.2d 1047, 1048 n.1 (2001). The moving party has the burden of proving that no genuine issues of material fact exist. *Rush v. Philadelphia Newspapers Inc.,* 732 A.2d 648, 650 (Pa. Super. 1999). In determining whether to grant summary judgment, this court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. *Potter v. Herman,* 762 A.2d 1116, 1117-18 (Pa. Super. 2000). Thus, summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. *Id.* at 1117. In sum, only if the facts are so clear that reasonable minds cannot differ, may we properly enter summary judgment. *Basile v. H & R Block Inc.,* 563 Pa. 359, 365, 761 A.2d 1115, 1118 (2000).

## DISCUSSION

Pursuant to its motion, Medtronic seeks judgment as a matter of law based on the following assertions:

(1) Plaintiff's loss of his Itrel 3 System mandates dismissal;

(2) Plaintiffs failed to produce the evidence necessary to support a manufacturing defect claim;

(3) Plaintiffs failed to present the expert medical opinion required to sustain their claim of personal injury;

(4) Restatement (Second) of Torts, as adopted by the Pennsylvania Supreme Court, mandates dismissal of plaintiffs' strict liability claim against Medtronic;

(5) Plaintiffs failed to produce evidence and expert opinion necessary to support their claims of design defect and failure to warn; and

(6) Plaintiffs failed to produce evidence to support a claim for breach of express or implied warranty.

We will address each in turn.

## 1. *Loss of Itrel 3 System*

Defendant asserts that because plaintiffs lost the Itrel 3 System, summary judgment should be granted.

Defendant relies on the three-prong test relating to the spoliation of evidence as articulated by the Pennsylvania Supreme Court in *Schroeder v. PennDOT,* 551 Pa. 243, 710 A.2d 23 (1998). In *Schroeder,* the Supreme Court considered the degree of fault of the party who altered or destroyed the evidence, the degree of prejudice suffered by the opposing party, and the availability of a lesser sanction that will protect the opposing party's rights and deter future conduct. *Id.* at 250, 710 A.2d at 27.

Applying the first prong of the test as articulated in *Schroeder,* plaintiffs bear a degree of responsibility for

the loss of the device. In *Bowman v. American Medical Systems,* 1998 WL 721079, *4 (E.D. Pa. 1998), the court found that "[e]ven though no evidence suggests that the plaintiff acted in bad faith, the evidence was actually discarded by his doctor, and not by [the plaintiff] himself, this in no way relieves [the plaintiff's] responsibility."

In the case at bar, plaintiffs' counsel notified the hospital prior to the removal of the device that the device was to be preserved. Plaintiffs did not thereafter make any additional efforts to preserve the device. Thus, as the plaintiff in *Bowman,* plaintiffs are not relieved of their responsibility to preserve the device in question.

Applying the second prong of the test, we agree that Medtronic cannot adequately prepare a defense to plaintiffs' claims without being able to analyze and test the device that was implanted in plaintiff. As the article relied upon by plaintiffs' expert, Ted Milo, points out, there are many factors that contribute to a malfunctioning device. See Dusan Velimirovic et al., *Epidural Lead Fracture Caused by Material Processing Fault,* PACE (September 1991) at 1427. Some of these factors are corrosive action of body fluids, improper movement of the patient, and improper installation of the implant. *Id.*

Plaintiffs assert that defendant's doctors concluded after performing an independent medical exam that the lead was fractured. However, as defendant asserts, the doctors only concluded that the lead fractured; the doctors were not able to conclude how or why the lead fractured. Thus, without the device at hand, defendant is unable to determine whether any or all of these possibilities mentioned above contributed to the malfunctioning device.

Applying the third prong of the test, there is no lesser sanction available than to dismiss the claims against defendant.

Plaintiffs rely on *O'Donnell v. Big Yank Inc.*, 696 A.2d 846 (Pa. Super. 1997), to support the argument that the product is not required when the claim is for design defect. In *Big Yank*, the plaintiff alleged that the pants in question were defectively designed. The Superior Court held that the pants were not necessary to enable the defendants to prepare a defense, as the defendants were able to examine other exact models and perform tests on those pants. *Id.*

Plaintiffs' argument, however, is based on a claim for design defect. As further discussed below, plaintiffs' expert does not present a design defect claim, but rather Milo presents a manufacturing defect claim.

Therefore, due to the spoliation of the evidence, we must grant summary judgment in favor of defendant, Medtronic.

## 2. *Design Defect and Failure To Warn Claims*

Defendant argues that summary judgment should be granted on the basis that plaintiffs' sole expert has not offered any opinion that the device was defectively designed or was accompanied by inadequate warnings. Defendant relies on *Van Buskirk v. West Bend Co.*, 100 F. Supp.2d 281 (E.D. Pa. 1999), *affirmed by* 216 F.3d 1078 (3d Cir. 2000), to support his argument that summary judgment should be granted on the basis that plaintiffs' expert did not propose an alternative design as is required to support a claim for design defect. Further-

more, defendant asserts that the learned intermediary doctrine precludes any failure to warn claim.

Having reviewed Milo's report, we agree with defendant that Milo offers no opinion that the device was defectively designed. Milo only opines that plaintiff's complications were the result of a defective lead. Milo report at 12. Even so, plaintiffs are required to provide the availability of a substitute product which would meet the same need and not be as unsafe. *Van Buskirk* at 285. "Merely because '[s]ome injuries may occur does not mean that a [product] is defective.'" *Id.* at 286, quoting *Monahan v. Toro Co.,* 856 F. Supp. 955, 959 (E.D. Pa. 1994). Plaintiffs have not done so.

Furthermore, we agree with defendant that plaintiffs are precluded by the learned intermediary doctrine from asserting a failure to warn claim against Medtronic. First adopted by the Supreme Court in *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971), the learned intermediary doctrine provides that a "manufacturer of a prescription drug must direct warnings to the prescribing physician, but not to the patient." *Taurino v. Ellen,* 397 Pa. Super. 50, 52, 579 A.2d 925, 927 (1990). Although the Itrel 3 System is not a prescription drug per se, it is a prescription medical device and we believe that the rationale of the learned intermediary doctrine is equally applicable to a prescription medical device. Therefore, we hold that Medtronic did not have to give warnings to plaintiffs, but rather it is Medtronic's duty to give warnings to the prescribing physician. As such, plaintiffs' argument that there is no warning in the SCS Patient Education booklet that the lead wire can fracture or break is irrelevant.

Based on the above, we must grant defendant's motion for summary judgment as to plaintiffs' design defect and failure to warn claims.

Although this court believes that summary judgment is warranted on the above alone, we will continue to address the other issues raised by Medtronic.

### 3. *Strict Liability Claim*

Defendant has asserted that summary judgment must be granted because the Pennsylvania Supreme Court has held that comment k to section 402A of the Restatement (Second) of Torts precludes the application of strict liability to products such as prescription drugs, reasoning that, although such products are not without medical risks and are, therefore, dangerous, they should not be deemed defective and unreasonably dangerous when distributed with proper warnings.

In response, plaintiffs have stated that "the Restatement of Torts 402A does not bar plaintiffs' claims. There is no authority that this section applies to medical devises [sic]. This section is meant to address such inherently dangerous devices such as dynamite, guns and kitchen knifes [sic]." Plaintiffs' brief in opposition at 5.

The Supreme Court of Pennsylvania in *Hahn v. Richter,* 543 Pa. 558, 563, 673 A.2d 888, 891 (1996), relying in part on comment k of section 402A of the Restatement (Second) of Torts, held that "where the adequacy of warnings associated with prescription drugs is at issue, the failure of the manufacturer to exercise reasonable care to warn of dangers, *i.e.,* the manufacturer's negligence,

is the only recognized basis of liability." Therefore, the Supreme Court held that strict liability was not a basis of liability. *Id.*

Thus, section 402A is applicable to medical cases, contrary to the assertion of plaintiffs. Furthermore, since strict liability is not a basis of liability when the adequacy of the warnings is at issue, defendant's motion for summary judgment based on strict liability is granted.

### 4. *Express or Implied Warranty Claims*

Defendant Medtronic has set forth numerous reasons why Medtronic's motion for summary judgment as to plaintiffs' claims based on express or implied warranty should be granted.

Plaintiffs, however, in their brief in opposition to Medtronic's motion for summary judgment failed to respond to any of defendant's assertions, including its assertion that Medtronic provided an express limited warranty with plaintiff's lead, which explicitly disclaimed any implied warranties. Furthermore, as defendant asserts, and plaintiffs do not rebut, "in order to qualify for the limited warranty, 'If the lead . . . is explanted, it must be returned to Medtronic within 30 days of explantation . . . .' " Defendant's brief at 27, quoting Implant Manual.

It is clear that plaintiffs did not return the device to Medtronic within the period delimited in the warranty. Therefore, because plaintiffs can no longer benefit from the express limited warranty, and because any implied warranties were disclaimed, defendant's motion for summary judgment is granted as to those claims.

### 5. *Manufacturing Defect and Personal Injury Claims*

Plaintiffs have failed to respond to defendant's motion for summary judgment regarding plaintiffs' manufacturing defect and personal injury claims. Therefore, judgment is entered in favor of defendant as to those claims pursuant to Pa.R.C.P. 1035.3(d).

### ORDER

And now, June 3, 2005, upon consideration of motion for summary judgment filed by defendant, Medtronic, it is hereby ordered and decreed that defendant's motion is hereby granted.