**Nazareth Mut. Ins. Co. v. Velez**

C.P. of Monroe County, no. 530 CV 2009.

*Gary A. Brienza,* for plaintiff.

*Lucille Marsh* and *Arlindo B. Araujo,* for defendants.

SIBUM, *J.,* November 29, 2010—This matter comes before the court on plaintiff's motion for summary judgment. Plaintiff, Nazareth Mutual Insurance Company, commenced this action seeking declaratory relief with respect to its duty to defend and/or indemnify defendant Ray A. Velez under a homeowner's insurance policy issued by plaintiff to Ray Velez and his wife, Maria E. Velez. Plaintiff filed a complaint against all defendants on January 21, 2009. Defendant Martha Guardiola, individually and as Executrix of the Estate of Armando A. Guardiola, filed an answer and new matter on July 29, 2009. Defendants Ray Velez, Maria Velez and Velez Transport Services did not file an answer to plaintiff's complaint. Plaintiff filed a reply to defendant Guardiola's new matter on August 19, 2009. Plaintiff then filed a motion for summary judgment on August 19, 2010. Both plaintiff and defendant Guardiola filed briefs and appeared for oral argument heard before this court on November 1, 2010. Counsel for defendants Ray Velez, Maria Velez and Velez Transport did not attend nor provide any argument or documentation to substantiate their positions. After review of the pleadings of record, we are now prepared to decide this matter.

## DISCUSSION

Pennsylvania Rule of Civil Procedure §1035.2 permits the trial court to dismiss an action after the close of pleadings where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 204, 412 A.2d 466, 468-69 (Pa. 1979). Summary judgment

may only be entered where the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits demonstrate that no genuine, triable issue of fact exists and that the moving party is entitled to judgment as a matter of law. *Brecker v. Cutler*, 578 A.2d 481 (Pa. Super. 1990).

Summary judgment may be granted only in cases where the right is clear and free from doubt. *Musser v. Vilsmeier Auction Co.*, 522 Pa. 367, 369, 562 A.2d 279, 280 (Pa. 1989). Only when the facts are so clear that reasonable minds cannot differ may a trial court properly enter summary judgment. *Basile v. H&R Block*, 563 Pa. 359, 761 A.2d 1115 (Pa. 2000). The trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. *Potter v. Herman,* 762 A.2d 1116 (Pa. Super. 2000). The moving party bears the burden of proving that no genuine issue of material fact exists. *Long v. Yingling*, 700 A.2d 508, 512 (Pa. Super. 1997).

In response to a motion for summary judgment, the non-moving party may not rest upon the pleadings, but must set forth specific facts demonstrating a genuine issue for trial. *Phaff v. Gerner*, 451 Pa. 146, 303 A.2d 826 (Pa. 1973). Failure to allege such specific facts will result in summary judgment, if appropriate, against the non-moving party. Pa.R.C.P. 1035.3; *Overly v. Kass*, 554 A.2d 970 (Pa. Super. 1989). The court must also accept as true all well-pled facts contained in the non-moving party's pleadings. *Mattia v. Employers Mut. Cos.*, 440 A.2d 616 (Pa. Super. 1982). The court must ignore contested facts contained

in the pleadings and restrict its view to allegations in the pleadings that are uncontroverted and to material filed in support of and in opposition to a motion for summary judgment. *Nationwide Mutual Ins. Co. v. Nixon,* 682 A.2d 1310, 1313 (Pa. Super. 1996), allocator denied, 548 Pa. 619, 693 A.2d 589 (Pa. 1997) (citation omitted).

Prior to the instant action, defendants Ray Velez and Velez Transport Services were sued by Martha Guardiola ("Guardiola"), in both her individual capacity and as executrix of the estate of Armando Guardiola ("decedent"), for damages arising out of the killing of decedent[1]. In the case now before the court, plaintiff Nazareth Mutual Insurance Company, who issued a homeowner insurance policy to defendants Ray and Maria Velez, has filed this action seeking declaratory relief excusing it from defending Ray Velez in the lawsuit file by Guardiola. Plaintiff contends that Ray Velez engaged in a criminal act which makes him ineligible for liability coverage under his homeowner's insurance policy. Specifically, plaintiff asserts that the policy provides liability coverage for the Velezes for bodily injury caused by an insured but that they are excluded from coverage because Ray Velez was convicted of the voluntary manslaughter of decedent. Therefore, plaintiff asserts that it has no duty to defend or indemnify defendants against litigation commenced by Guardiola for negligence.

In order to render our decision on plaintiff's motion for summary judgment, we must review the facts in the light most favorable to the non-moving party which

---

1. See Court of Common Pleas of Monroe County docket number 10365 CV 2007.

reveal the following. Plaintiff issued an insurance policy to defendants Ray and Maria Velez for the period of June 30, 2007 through June 30, 2008[2] which provided homeowner's insurance to defendants for their home in Stroudsburg, Pennsylvania. [Complaint, ¶6; Guardiola answer, ¶6.][3] Ray Velez is the president and/or majority shareholder of Velez Transport Services, Inc.; however, Velez Transport Services was not named as an insured party. [Complaint, ¶7, 8; answer, ¶7,8.]

On August 25, 2006, Ray Velez was at his home when decedent and two men, who all had an existing business relationship with Velez, traveled to Velez's residence to collect payment for two completed trucking trips and to discuss worker's compensation issues. [Complaint, ¶9-12; answer, ¶9-12.] Upon learning that decedent was coming to Velez's home, Velez retrieved a sawed-off pistol-grip

---

2. Plaintiff attached to its complaint the defendants' homeowner's insurance policy for the period of June 30, 2007 through June 30, 2008, a period after the August 25, 2006 incident occurred. However, we note that this policy provides that it is a renewal from the previous policy period which would have encompassed the date of the incident. Since none of the parties have raised this as a potential issue in an answer to the complaint, we believe this policy to be the same policy as was in effect at the time of the occurrence. As such, we will rely upon the terms and definitions as presented in the policy attached to plaintiff's complaint.

3. Reference to the answer and new matter filed by defendant Martha Guardiola, individually and on behalf of decedent Armando Guardiola, will be cited as [Answer, ¶__.] Furthermore, in defendant Guardiola's answer, Guardiola either affirmatively admits the averments or provides the following general response: "Defendants Guardiola and the Estate of Guardiola, neither admit nor deny and leave to Plaintiff its burden of proof at the time of trial." Such responses do not specifically deny plaintiff's averments as required by the rules of court. Therefore, Guardiola has effectively admitted every allegation of the complaint by either expressly admitting plaintiff's allegations or by failing to articulate specific reasons as to why the allegations are not true. By failing to counter the averments outlined in the complaint and supported by the documentation attached to plaintiff's motion for summary judgment, defendant has merely rested upon the pleadings.

shotgun, loaded it with one shell, chambered the round, and placed it in his computer desk drawer. [Complaint, ¶14; answer, ¶14.]

Upon arrival, the men entered Velez's residence and Velez informed decedent that he was not welcome in his home. [Complaint, ¶15, 16; answer, ¶15, 16.] Despite the statement, decedent did not leave and engaged in discussion about the worker compensation issues. [Complaint, ¶17, 18; answer, ¶17, 18.] During this heated conversation, Velez obtained the shotgun from the drawer and shot decedent in the chest from approximately 6 to 8 feet away. [Complaint, ¶21, 25; answer, ¶21, 25.] Velez was arrested and charged with an open count of criminal homicide[4] and one count of prohibited offensive weapons. [Complaint, ¶31; answer, ¶31.] After a bench trial on May 29, 2008, the Honorable Ronald E. Vican of this court found Velez guilty of one count of voluntary manslaughter and one count of possession and use of a prohibited offensive weapon. [Complaint, ¶38; answer, ¶38.]

On November 26, 2007, Guardiola, individually and as executrix of the estate of Armando Guardiola, commenced litigation against defendants Ray Velez and Velez Transport Services, Inc. [Complaint, ¶39; answer, ¶39.] The complaint in the underlying lawsuit alleges that Ray Velez was negligent in his use of excessive and deadly force, in failing to call the police and not taking an action short of deadly force against the decedent, and in

---

4. Criminal homicide is defined by statute as follows: "A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa.C.S.A. §2501(a). "Criminal Homicide shall be classified as murder, voluntary manslaughter, or involuntary manslaughter." 18 Pa.C.S.A. §2501(b).

failing to warn the decedent to leave the residence before he used deadly force. [Complaint, ¶40; answer, ¶40.] Plaintiff has since filed a complaint in regard to its duty to defend or indemnify Ray Velez under his insurance policy in connection with this civil action.

Plaintiff claims that the insurance policy at issue provides for liability coverage for Ray and Maria Velez for bodily injury caused by an insured. [Complaint, ¶43; answer, ¶43.] However, plaintiff argues that the policy has exclusions that apply to liability coverage, including bodily injury that is a result of a criminal act of an insured, or the result of an intentional and malicious act by or at the direction of an insured. [Complaint, ¶44; answer, ¶44.] Plaintiff contends that Velez's criminal actions make the exclusion contained within the policy applicable thereby excusing plaintiff from having to defend or indemnify the Velezes in the Guardiola action. [Complaint, ¶51-53, answer, ¶51-53.] Plaintiff filed a motion for summary judgment claiming that there is no coverage under the homeowner's insurance policy for any claims or damages arising from the August 25, 2006 incident and sought from the tort action instituted by Guardiola.

Interpretation of an insurance contract is a matter of law performed by a court rather than a jury. *Madison Construction Co. v. Harleysville Ins. Co.*, 557 Pa. 595, 605, 735 A.2d 100, 106 (Pa. 1999). In interpreting an insurance contract, the court's paramount role is "to ascertain the intent of the parties as manifested by the language of the written instrument." *Id.*; see also *Standard Venetian Blind v. American Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (Pa. 1983). Where the language of the insurance

contract is clear and ambiguous, effect must be given to the plain meaning of that language. *Madison*, 735 A.2d at 106.

In this case, defendants' homeowner's insurance policy provides in relevant part as follows:

Principal Coverages - Liability And Medical Payments To Others

Coverage L - Personal Liability - "We" pay, up to "our" "limit", all sums for which an "insured" is liable by law because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies. "We" will defend a suit seeking damages if the suit resulted from "bodily injury" or "property damage" not excluded under this coverage. "We" may make investigations and settle claims or suits that "we" decide are appropriate. "We" do not have to provide a defense after "we" have paid an amount equal to "our" "limit" as a result of a judgment or written settlement.

Coverage M - Medical Payments To Others - "We" pay the necessary medical expenses if they are incurred or medically determined within three years from the date of an accident causing "bodily injury" covered by this policy.

Exclusions that apply to liability coverages "We" do not pay for "bodily injury" or "property damage" resulting from one or more of the following excluded "occurrences", regardless of other causes or "occurrences" that contribute to or aggravate the "bodily injury" or "property damage", whether such

cause or "occurrences" act to produce the "bodily injury" or "property damage" before, at the same time as, or after the excluded "occurrence".

1. Exclusions That Apply to Coverages L and M - This policy does not apply to:

    i.      "bodily injury" or "property damage":

        (1) Which is expected by, directed by, or intended by an "insured";

        (2) That is the result of a criminal act of an "insured"; or

        (3) That is the result of an intentional and malicious act by or at the direction of an 'insured".

This exclusion applies even if:

    (1) the "bodily injury" or "property damage" that occurs is different than what was expected by, directed by, or intended by the "insured", or

    (2) the "bodily injury" or "property damage" is suffered by someone other than the person or persons excepted by, directed by, or intended by the "insured".

Here, Ray Velez was convicted after bench trial of voluntary manslaughter in the killing of decedent. The crime of voluntary manslaughter is set forth by statute, in pertinent part, as follows:

    (a) General rule. - A person who kills an individual

without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:

(1) the individual killed; or

(2) another whom the actor endeavors to kill, but he negligently or accidentally causes the death of the individual killed.

(b) Unreasonable belief killing justifiable. - A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title, but his belief is unreasonable. 18 Pa.C.S.A. §2503(a)-(b).

After the bench trial, Judge Vican provided the following explanation in his adjudication and verdict as to the reasons for finding Velez guilty of voluntary manslaughter:

To convict defendant of third-degree murder, the Commonwealth must establish that he committed an unlawful killing with malice. The victim's death is properly characterized as an unlawful killing and malice can be inferred from defendant discharging a sawed-off shotgun into the victim's chest. However, in certain situations murder may be reduced to voluntary manslaughter based upon the circumstances surrounding the killing. For example, an intentional killing will be

treated as voluntary manslaughter if committed as a result of defendant's unreasonable belief in need to utilize deadly force in self-defense. This scenario is often referred to as "imperfect self-defense."

An imperfect self-defense claim is "imperfect in only one respect - an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life.

To establish self-defense, as set forth by 18 Pa.C.S.A. §505, the defendant must not only show that he was protecting himself against the use of unlawful force, but establish that he was free from fault in provoking or continuing the difficulty which resulted in the killing.

Although defendant was not justified in using deadly force against the victim, it is not inconsistent with the evidence to conclude that in the heat of the moment he believed he was alleviating a perceived threat to himself and his daughter. It was the victim, rather than defendant, who escalated the confrontation by remaining in defendant's home after defendant made it clear he was not welcome.

These circumstances, which were not of defendant's creation, were of such dimension that we cannot find defendant's conduct, albeit unreasonable, to be more than a reaction to an immediate perceived threat. Because defendant proceeded to act upon that unreasonable belief, we cannot convict defendant of third-degree murder.

Voluntary manslaughter is a killing committed without

malice, in the heat of passion or under an unreasonable belief that it was justified.

When the victim and his two companions showed-up uninvited at defendant's home in an attempt to intimidate defendant into meeting their monetary demands, defendant misinterpreted the situation and used deadly force under circumstances that did not justify the use of such force. Because defendant killed the victim while acting upon an unreasonable belief that the circumstances justified his use of deadly force, we find defendant guilty, pursuant to 18 Pa.C.S.A. §2503(b), of voluntary manslaughter. *Commonwealth v. Velez*, No. 1268 CR 2006 (C.P., Monroe, May 29, 2008)(citations omitted).

Having been convicted of the crime of voluntary manslaughter by this court in regards to the event that occurred on August 25, 2006, it has been established that the "bodily injury" caused to decedent was the result of a criminal act by the insured, Ray Velez. The language of the insurance policy provides that the policy does not apply to bodily injury that is the result of a criminal act of an insured. Therefore, pursuant to the exclusions provided for in the policy, the bodily injuries caused by the criminal acts of Ray Velez are not covered under his homeowner's insurance policy.

As stated above, the language of the insurance policy provides that the policy does not apply to bodily injury which is intended by an insured or that is the result of a criminal act of an insured or that is the result of an intentional and malicious act by the insured. We interpret this language to mean that only one exclusion must

be satisfied to bar Ray and Maria Velez from liability coverage. Having determined that the Velezes are excluded based on Ray Velez committing a criminal act, we need not analyze the remaining exclusions. However, in the interest of judicial economy, we will briefly discuss plaintiff's remaining argument as to Ray Velez's intent.

Plaintiff also claims in its motion for summary judgment that the conviction for voluntary manslaughter acts as collateral estoppel which would bar any of the defendants from relitigating the issue of intent in a subsequent civil action, such as the one filed by Guardiola. Plaintiff argues that Ray Velez was convicted of voluntary manslaughter when this court concluded that he intended the actions which resulted in the death of decedent and therefore, there is no basis for Velez to now contend that his actions were unintentional. Guardiola, on the other hand, contends that the court explicitly ruled that Ray Velez did not act intentionally or maliciously when it rejected the charge of third degree murder and correctly characterized Velez's actions as unreasonable self-defense. Thus, Guardiola argues that Velez's actions were negligent by definition and that the policy exclusion, therefore, does not apply.

This issue of Velez's intent to harm decedent was thoroughly addressed by Judge Vican in his adjudication and verdict preceding Ray Velez's bench trial. In his opinion and order, Judge Vican found Ray Velez guilty of an intentional killing. Judge Vican found that the defendant's intentional killing of the decedent was required to be treated as voluntary manslaughter since it was committed

as a result of defendant's unreasonable belief in the need to utilize deadly force in self-defense. As such, both Judge Vican's opinion and order and the concise language of the insurance policy support our conclusion that Ray Velez's actions constitute an exclusion under this policy.

Having determined that Ray Velez's actions have excluded him and his wife from coverage under their homeowner's insurance policy, we find that no material issues of fact remain as to this case. Plaintiff's motion for summary judgment will be granted.

Accordingly, we enter the following order.

ORDER

And now, November 29, 2010, plaintiff's motion for summary judgment is granted.